FROST MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14055, 14056. Promulgated October 5, 1928.

*Bernard D. Hathcock, Esq.*, for the petitioner.
*Leroy L. Hight, Esq.*, and *J. M. Morawski, Esq.*, for the respondent.

OPINION.

SIEFKIN: At the hearing of this proceeding counsel for the respondent moved that the petition under Docket No. 14056 be dismissed in so far as it relates to the year 1919. Since the respondent asserted no deficiency for that year, but found an overassessment, the motion is herewith granted.

The questions to be decided are whether the respondent erred in (1) refusing to allow, for purposes of computing depreciation, the value of depreciable assets as of March 1, 1913, as claimed by the petitioner; (2) refusing to allow rates of depreciation during the years 1917, 1918, and 1920 claimed by the petitioner; (3) reducing the invested capital of the petitioner for each of the years in question on account of alleged insufficient depreciation in prior years; and (4) failing to exclude from gross income of the petitioner for the year 1919 an amount received by petitioner from the Federal Government as contractual amortization.

(1) The petitioner caused an appraisal company to make an appraisal of its machinery and equipment as of March 28, 1914. The appraisal report discloses a new reproduction cost of the properties

of $117,092.50. There was deducted therefrom in the report depreciation in the amount of $12,941.49, leaving a value of $104,151.01. In 1924 the petitioner caused the appraisal company to revise its appraisal of March 28, 1914, and show valuation and depreciation as of March 1, 1913. A new reproduction cost of machinery and equipment on hand as of March 1, 1913, was found to be $115,023.34. The respondent agrees that this was the new reproduction cost. Depreciation in the amount of $8,736.04 was deducted from this leaving an alleged March 1, 1913, value of the machinery and equipment of $106,287.30. But, as we said in *Greenbaum Brothers, Inc.*, 6 B. T. A. 86:

Even though we accept the appraisal made in 1914 as establishing the reproduction cost as of March 1, 1913, we are unable to determine the actual value of the buildings on March 1, 1913, as replacement cost gives no dependable index to actual value.

We hold that the petitioner has failed to overcome the presumption of correctness of the respondent's valuation of the depreciable assets as of March 1, 1913.

(2) The rates of depreciation allowed by the respondent during the years 1917, 1918, and 1920, and the rates claimed by the petitioner during those years are as follows:

| Assets | Rates of depreciation | |
|---|---|---|
| | Claimed by petitioner | Claimed by respondent |
| | *Per cent* | *Per cent* |
| Electros and woodcuts | 25 | 16⅔ |
| Machinery | 7½ | 6½ |
| Tools | 25 | 16⅔ |
| Jigs and dies | 25 | 16⅔ |
| Motors and electrical equipment | 10 | 5 |
| Power equipment | 7½ | 6⅔ |
| Pipe and fitting | 7½ | 5 |

During the years 1917 to 1920 the petitioner was confronted by abnormal conditions which increased the depreciation of machinery and equipment. The World War brought on conditions which caused large demands for labor in munitions factories and, as a result of this, the petitioner lost many of its experienced workmen. The consequence was that the machinery and equipment of the petitioner was damaged to an unusual extent by inexperienced help which petitioner had to employ.

The rates of depreciation set forth above were recommended to the petitioner by an accountant who figured the rates upon 1912 book valuations. Many of the tools had been owned by the petitioner for several years and many were obsolete. No investigation was made as to the condition of individual items.

W. J. Frost, president of the petitioner, who controlled the policy of writing off depreciation of the petitioner, testified as follows:

Q. Do you know whether or not the rates claimed during the years 1917 to '20 are higher than the rates of depreciation used in computing depreciation entered upon the books of the corporation prior to the year 1917?
A. Yes, they were higher—or are higher. Higher today.
Q. You had some reason, I assume, for increasing the rates of depreciation during those years '17 to '20 over and above the rates used in previous years?
A. I did. I considered it a very good reason.
Q. What was the reason?
A. The fact that depreciation was figured on low valuations or previous costs. Beginning with the earlier years of the war the cost of all of our equipment advanced tremendously. Now, a depreciation which would take care of and replace cost value based on what we paid for the material would be entirely inadequate to replace it at the increased values.

\* \* \* \* \* \* \*

Q. Assuming that they have allowed additional depreciation because of overtime operations, did you consider that in spite of that fact the normal depreciation rates during the years 1917 to 1920 should be higher than those theretofore used?
A. Yes, I do, for this reason. Assuming that the Government did allow additional depreciation, that would be simply for the additional time of use, and that would not affect the point that I mentioned before, the necessity for higher rates of depreciation to cover the new cost or the cost of replacing that machinery.

In *Louis Titus*, 2 B. T. A. 754, we stated:

\* \* \* The theory of depreciation is that the taxpayer should be allowed, during the useful life of property used in his business, to recover the cost of such property. *Appeal of the Brevoort Hotel Co.* 1 B. T. A. 132.

We are, therefore, led to the opinion that the depreciation claimed by the petitioner was based upon an improper conception of the theory of depreciation and that such claimed rates are excessive. The respondent's determination of rates of depreciation will not be disturbed.

(3) The petitioner contends that the book value of its assets as of December 31, 1916, in the amount of $106,422.10, should be included in invested capital as of that date. The evidence discloses that these assets were, in the main, equipment owned by petitioner since its organization in 1902. The books of petitioner show that the amount of depreciation taken up to December 31, 1916, was $21,985.60. This indicates that over this period an average depreciation of only slightly over 1 per cent was taken on the assets, the cost of which amounted to $128,407.70.

On page 44 of the deposition, Frost testified as follows:

Q. In your opinion, Mr. Frost, do you believe that the consideration of such depreciation as was written off in years prior to 1917 and the items which were charged to expenses which might properly have been capitalized, would give a result comparable to that arrived at by using the rates which you en-

tered upon your books and claimed in your tax returns for the years 1917 to 1920?

A. Yes, I do. I think that is borne out by what followed in 1914. You see when we moved over here we wrote off quite an item. I don't recall the exact amount, but it was a considerable item—wiped it off entirely—so that when we were in full operation here we felt that we had the full value that was reflected by our books; but at that time in order to confirm that question I had an appraisal made, and the sound value of that appraisal showed a slightly higher figure than our books, I think that would in itself justify the practice that we had followed in the previous years.

However, we have been presented with insufficient evidence to determine whether or not items charged to expense should have been properly capitalized, nor were the amounts of such items placed in evidence. As already pointed out, the appraisal made was based upon cost of reproduction as of date of the appraisal and such appraisal is entitled to little weight. The petitioner contends that such appraisal, which was approximately the same as the values shown upon the books, proves that the book values were proper. We cannot agree with this contention. It is our opinion that insufficient depreciation was taken in years prior to the taxable years in question and the respondent's determination of asset values for invested capital purposes will not be disturbed.

(4) On May 27, 1919, a settlement or agreement was entered into between the petitioner and the Federal Government, whereby petitioner was awarded an amount of $5,285.39 for amortization of war contracts which had been entered into in 1918 and 1919. This amount was included by the petitioner in its return for the year 1919 as income. The respondent has deducted the contractual amortization received from the cost of the assets upon which amortization has been allowed but has failed to exclude the same from the petitioner's income for the taxable year 1919. In failing to exclude this amount from the petitioner's income for this year the respondent has erred.

*Judgment will be entered under Rule 50.*